UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN ROBERT MIDECZKY,

                                  Plaintiff,

v.                                                      5:15-CV-0531
                                                        (GTS)
CAROLYN W. COLVIN
Commissioner of Social Security,

                                  Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 ANDREEA L. LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
  – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by John Robert Mideczky ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born on November 15, 1988.  Plaintiff completed high school and obtained a certificate in computer repair from a technical college.  Generally, Plaintiff's alleged disability consists of a learning disability, Asperger's syndrome, emotional disturbance, anger issues, and concentration deficits.

### B.   Procedural History

On January 12, 2012, Plaintiff applied for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 1995.  Plaintiff's application was initially denied on March 9, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  On July 11, 2013, Plaintiff appeared in a hearing before the ALJ, Elizabeth W. Koennecke.  (T. 26-45.)  On August 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-24.)  On February 24, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)

### C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 12-20.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 12, 2012, the application date.  (T. 12.)  Second, the ALJ found that Plaintiff's polysubstance abuse disorder and (variously characterized) mental impairment[1] are

---

[1]     The ALJ noted that mental health professionals assigned Plaintiff various diagnoses, including mood disorder, major depressive disorder, antisocial personality disorder, impulse control disorder, bipolar disorder, and posttraumatic stress disorder ("PTSD").  (T. 13.)  The ALJ explained that in finding that Plaintiff has a severe mental impairment, however characterized, she considered all symptoms affecting his mental functioning.  (*Id.*)

severe impairments, but Plaintiff does not have a severe cognitive disorder or back disorder.  (T.

13-14.)  (*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination,

did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

App. 1.  (T. 15.)  The ALJ considered Listings 12.04, 12.06, 12.08, and 12.09.  (*Id.*)  Fourth, the

ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform a full range of
> work at all exertional levels.  Mentally, the claimant retains the ability
> (on a sustained basis) to understand and follow simple instructions and
> directions,  perform simple tasks with supervision and independently,
> maintain attention and concentration for simple and some complex
> tasks, regularly attend to a routine and maintain a schedule, relate to
> and interact appropriately with others to the extent necessary to carry
> out simple tasks, and handle simple work-related stress in that he is
> able to make decisions directly related to the performance of simple
> tasks in a position with consistent job duties that does not require him
> to supervise or manage the work of others.

(T. 15-18.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 19.)  Sixth, and

finally, the ALJ found that there are jobs that exist in significant numbers in the national economy

that Plaintiff can perform.  (T. 19-20.)

### D.      The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes three arguments in support of his motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial

evidence.  (Dkt. No. 9, at 11-15 [Pl.'s Mem. of Law].)  Within this argument, Plaintiff argues that

(1) the ALJ erred by not requesting an opinion of Plaintiff's functional limitations from treating

therapist, Ms. DeFurio, (2) the ALJ failed to reconcile her RFC finding with the opinions of Dr.

Noia, Dr. Shapiro, and Dr. Reddy that she afforded great weight, and (3) the ALJ failed to

perform a function by function analysis of Plaintiff's nonexertional limitations.  (*Id.*)  Second,

Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence,

and the ALJ erred by considering the sporadic nature of Plaintiff's psychiatric treatment in her credibility analysis without considering reasons for the same. (*Id.*, at 15-16.) Third, and finally, Plaintiff argues that the ALJ's step five determination is unsupported by substantial evidence because the ALJ was required to consult a vocational expert based on Plaintiff's nonexertional limitations. (*Id.*, at 16-18.)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (Dkt. No. 10, at 5-14 [Def.'s Mem. of Law].) Within this argument, Defendant argues that (1) the ALJ properly engaged in a function by function analysis of Plaintiff's mental abilities and limitations, (2) the ALJ properly evaluated the medical evidence of records, and (3) the ALJ was not required to obtain an opinion of Plaintiff's mental limitations from social worker, Ms. DeFurio. (*Id.*) Second, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.,* at 14-17.) Third, and finally, Defendant argues that the ALJ was not required to obtain vocational expert testimony at step five of the sequential analysis. (*Id.*, at 17-19.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived

of the right to have her disability determination made according to the correct legal principles.");

*accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d

Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has

been defined as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review." *Valente v.

Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.      **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482

U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and addressed out of order below.

### A.     Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 5-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"Work-related mental activities generally required by competitive, remunerative work include

the abilities to understand, carry out, and remember instructions; use judgment in making work-

related decisions; respond appropriately to supervision, co-workers and work situations; and deal

with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and

other evidence in the case record to assess the claimant's ability to meet the physical, mental,

sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at

*8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider

medical opinions and facts, physical and mental abilities, non-severe impairments, and the

plaintiff's subjective evidence of symptoms. 20 C.F.R. § 416.945(b)-(e). The ALJ must

consider RFC assessments made by acceptable medical sources and may consider opinions from

other sources, such as therapists and social workers, to show how a claimant's impairments may

affect his or her ability to work. 20 C.F.R. § 416.913(c)(d). Finally, an ALJ's RFC

determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984).

When controlling weight is not afforded to the opinion of a treating physician, or when

assessing a medical opinion from another source, such as a consultative examiner, the ALJ

should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 416.927(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

### i.      Consultative Examiner, Dennis Noia, Ph.D.

On August 16, 2011, Dr. Noia opined that Plaintiff was "moderately limited" in his ability to perform complex tasks independently and had "normal functioning" in following, understanding, and remembering simple instructions and directions; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; maintaining basic standards of hygiene and grooming; using public transportation; and performing low stress and simple tasks.[2] (T . 16, 212.)

The ALJ noted that Dr. Noia observed that Plaintiff's mood was depressed and his affect was constricted, but the remainder of the evaluation was normal. (T. 17.) Dr. Noia noted that Plaintiff reported that he had deficits in concentration, but Dr. Noia observed that Plaintiff appeared to have no difficulty with attentiveness during the evaluation. (*Id.*) Dr. Noia assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60, indicating moderate

---

[2]      The assessment form defined "moderately limited" as being unable to function 50 percent of the time. (T. 16, 212.) The assessment form defined "normal functioning" as having no evidence of limitation. (*Id.*)

symptoms. [3]  (T. 16, 212.)

### ii.     Consultative Examiner, Jeanne A. Shapiro, Ph.D.

On February 27, 2012, Dr. Shapiro opined that Plaintiff might have difficulties with adequately understanding and following some instructions and directions, as well as completing some tasks (due to memory and concentration deficits), interacting appropriately with others (due to emotional lability and social withdrawal), and attending work and maintaining a schedule (due to lack of motivation and lethargy).  (T. 16, 218.)  Dr. Shapiro opined that Plaintiff does not appropriately manage stress.  (*Id.*)

The ALJ noted that, upon examination, Dr. Shapiro observed that Plaintiff's attention, concentration, and recent and remote memory skills were intact, and estimated that Plaintiff's intelligence was in the average range.  (T. 14, 217.)  Dr. Shapiro observed that Plaintiff's thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking.  (T. 217.)  Dr. Shapiro further observed that Plaintiff's mood was calm, and his manner of relating, social skills, and overall presentation were adequate.  (*Id.*)

### iii.     State Agency Medical Consultant, V. Reddy

On February 29, 2012, Dr. Reddy reviewed Plaintiff's medical records and completed a mental RFC assessment and functional capacity assessment form.  (T. 234-36.)  Dr. Reddy opined that, despite poor motivation, Plaintiff was capable of sustaining attention and concentration for a simple task job that does not involve working closely with others.  (T. 236.)

The ALJ stated that she afforded great weight to Dr. Noia, Dr. Shapiro, and Dr. Reddy's

---

[3]         The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter,* 377 F.3d 183, 186 n. 1 (2d Cir. 2004).  A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV).

opinions because they are consistent with the objective medical evidence, including Plaintiff's limited mental health treatment records and generally normal mental status examinations. (T. 16-17.) The Court finds that Plaintiff's mental RFC determination was supported by substantial evidence, including the opinions of Dr. Noia, Dr. Shapiro, and Dr. Reddy. (T. 209-14, 215-19, 234-36.) Moreover, the Court finds that the ALJ's assessment of the opinions was supported by substantial evidence for the reasons set forth below.

First, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Second, the ALJ properly applied the regulations in evaluating Dr. Noia, Dr. Shapiro, and Dr. Reddy's opinions. As discussed above, the ALJ considered each medical source's professional credentials, and the consistency of the opinions with other medical evidence in the record pursuant to 20 C.F.R. § 416.927(c). (T. 13-18.) Moreover, the ALJ considered the additional regulatory factors that applied to Dr. Shapiro and Dr. Noia's opinions by citing their examining relationship with Plaintiff and examination findings that supported their opinions. (*Id.*) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512

F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").   For these reasons, the Court finds that the ALJ's assessment of Dr. Noia, Dr. Shapiro, and Dr. Reddy's opinions was supported by substantial evidence.

Next, the Court turns to Plaintiff's argument that the ALJ failed to reconcile her RFC determination with the opinions of Dr. Noia, Dr. Shapiro, and Dr. Reddy.  (Dkt. No. 9, at 12-15 [Pl's Mem. of Law].) Within this argument, Plaintiff references moderate limitations opined by Dr. Reddy.  (*Id.*, at 13.)  However, Defendant correctly notes that the referenced moderate limitations were not from Dr. Reddy's RFC assessment, but were from the check-box portion in Section I of the mental RFC form.  (Dkt. No. 10, at 9-10 [Def.'s Mem. of Law].)

The Social Security Administration's Program Manual Operation System instructs that the check-box portion in Section I of the mental RFC form is not an RFC assessment, but is "a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis."  SSA POMS DI 25020.010(B)(1).  "It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC." (*Id.*)  As discussed above, in the narrative section in Section III, Dr. Reddy wrote that, despite poor motivation, Plaintiff was capable of sustaining attention and concentration for a simple task job that does not involve working closely with others.  (T. 236.)  Accordingly, the ALJ properly considered this portion of Dr. Reddy's assessment as Dr. Reddy's opinion.  (T. 16.)

Nonetheless, the ALJ explained that she did not adopt Dr. Reddy's determination that Plaintiff had moderate limitations in concentration, persistence, or pace because it was contradicted by Dr. Shapiro's evaluation.  (T. 15.)  As discussed above, Dr. Shapiro observed that Plaintiff's attention, concentration, and recent and remote memory skills were intact, and Dr. Shapiro's opinion did not include definitive limitations in this area.  (T. 14.)  The ALJ noted that Dr. Shapiro opined that Plaintiff *might* have difficulties with adequately understanding and following some instructions and directions and completing some tasks, and Dr. Noia opined that Plaintiff had *normal functioning* in following, understanding, and remembering simple instructions and directions, and maintaining attention and concentration for rote tasks.  (T. 16.)

In any event, an ALJ is not required to reconcile "every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).  Moreover, an ALJ is not required to adhere to the entirety of one medical source's opinion in formulating the RFC.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  For these reasons, Plaintiff's argument that the ALJ failed to reconcile her findings with the opinions of Dr. Noia, Dr. Shapiro, and Dr. Reddy is without merit.

Finally, the Court turns to Plaintiff's argument that the ALJ failed to perform a function by function analysis of Plaintiff's nonexertional limitations and his ability to perform simple

work pursuant to SSR 85-15.  More specifically, Plaintiff argues that the ALJ's RFC determination did not address Plaintiff's ability to interact with supervisors, coworkers and the general public.  (Dkt. No. 9, at 14-15 [Pl.'s Mem. of Law].)

A review of the complete decision indicates that the ALJ explicitly addressed Plaintiff's ability to perform the functions of simple work as set forth in SSR 85-15.  (T. 15-19.)  First, the ALJ explained that unskilled work requires the abilities to understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers and usual work situations; and deal with changes in a routine work setting pursuant to SSR 85-15.  (T. 19.)  Second, the ALJ found that Plaintiff could perform the mental demands of unskilled work set forth in SSR 85-15.  (*Id.*)

As stated above, the ALJ determined that Plaintiff had the mental RFC (on a sustained basis) to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple and some complex tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent necessary to carry out simple tasks, and handle simple work-related stress (in that he is able to make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work of others).  (T. 15-18.)  Thus, the ALJ addressed Plaintiff's ability to perform the mental demand of unskilled work set forth in SSR 85-15 by finding that Plaintiff could perform simple work, including relating appropriately with others and adapting, or handling stress, in the context of simple work.  (*Id.*)

In any event, the Second Circuit has held that an ALJ's failure to perform a function by function analysis of a plaintiff's abilities does not require remand where, as here, the ALJ's step

four analysis of the plaintiff's functional limitations affords an adequate basis for meaningful judicial review, applies the correct legal standards, and is supported by substantial evidence. *Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013). Accordingly, Plaintiff's argument is without merit.

For these reasons, the Court finds that the ALJ's RFC determination was supported by substantial evidence, and remand is not required on this basis.

### B. Whether the ALJ Was Required to Request an Opinion of Plaintiff's Mental Limitations from Treating Therapist, Nicole DeFurio, L.M.S.W.

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 13-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

 Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 416.920b(c)(1). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.920b(c)(1)-

(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n. 5; *see also Aldrich v. Astrue*, 08-CV-0402, 2009 WL 3165726, *7 (N.D.N.Y. Sept. 28, 2009) ("A treating physician is recontacted only in situations when the evidence received from the treating physician or other medical sources is inadequate for the ALJ to determine whether Plaintiff is disabled.").

First, the Court notes that, as a therapist, Ms. DeFurio is not an acceptable medical source under the regulations. 20 C.F.R. § 416.1913(a). While the ALJ must consider RFC assessments made by acceptable medical sources, the ALJ is not required to consider opinions from other sources, such as therapists, to show how a claimant's impairments may affect his ability to work. 20 C.F.R. § 416.913(c)(d). Notably, an opinion from a therapist is not considered a medical opinion and is not entitled to any particular weight under the regulations. 20 C.F.R. § 416.1913(a), 416.927(b).

Second, there are no obvious gaps in the record that would preclude the ALJ from making an informed decision as to whether Plaintiff is disabled. The record contains Plaintiff's mental health treatment records, including Ms. DeFurio's treatment notes, as well as mental status examinations and opinions of Plaintiff's mental limitations from Dr. Noia, Dr. Shapiro, and Dr. Reddy discussed above in Part III.A. of this Decision and Order. (T. 209-14, 215-19, 234-36, 250-54.) Moreover, the ALJ specifically asked Plaintiff's counsel whether there were any outstanding records during the hearing on July 11, 2013, and Plaintiff's counsel affirmed that the record was complete by a letter of the same date. (T. 29, 101.)

For these reasons, the ALJ was not required to obtain an opinion of Plaintiff's mental

limitations from Ms. DeFurio, and remand is not required on this basis.

**C.    Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 10, at 14-17 [Def.'s Mem.

of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by

objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)

(quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is

not required to accept [a plaintiff's] subjective complaints without question; he may exercise

discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence

in the record."  *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15

2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient

specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's

disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent

evidence in the record.  First, the ALJ must determine whether the claimant has medically

determinable impairments, which could reasonably be expected to produce the pain or other

symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the
> ALJ must evaluate the intensity, persistence, and limiting effects of
> the symptoms to determine the extent to which they limit the
> claimant's capacity to work.  Because an individual's symptoms can
> sometimes suggest a greater level of severity of impairment than can
> be shown by the objective medical evidence alone, an ALJ will

consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing § 416.929[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (T. 18.) In making this determination, the ALJ found that Plaintiff's allegations were contradicted by his sporadic treatment for his psychological symptoms. (*Id.*) Additionally, the ALJ noted that, though Plaintiff alleged disability dating back to 1995, he did not begin any mental health treatment until 2011. (T. 16-17.) Plaintiff argues that the ALJ failed to analyze the nature of Plaintiff's diagnosed mental conditions and how his history of sporadic psychiatric treatment may be a result of his mental conditions. (Dkt. No. 9, at 15 [Pl.'s Mem. of Law].) Plaintiff's argument is well noted.

A plaintiff may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996). However, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering "any explanations that the individual may provide, or other

information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p 1996 WL 174186, at *8 (July 2, 1996). Moreover, reviewing courts have found that "faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (quoting *Day v. Astrue*, 07-CV-0157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008).

Here, while the ALJ considered Plaintiff's sporadic mental health treatment, the ALJ did not base her credibility assessment on that one factor alone. (T. 13-18.) Throughout the decision, the ALJ articulated the inconsistencies that she considered in assessing the allegations of Plaintiff's symptoms and in determining that Plaintiff is not as limited as alleged, including Plaintiff's normal mental status examinations and broad range of daily activities. (*Id.*)

First, the ALJ considered findings from Plaintiff's mental status examinations that were inconsistent with Plaintiff's allegations of disabling symptoms. (*Id.*) For example, the ALJ noted that Plaintiff reported difficulties getting along with others, but Dr. Shapiro observed that Plaintiff was cooperative with adequate social skills. (T. 14.) The ALJ further noted that Dr. Noia reported that Plaintiff stated that he had deficits in concentration, but Dr. Noia observed that Plaintiff appeared to have no difficulty with attentiveness during the evaluation. (T. 17.) Additionally, the ALJ noted that Dr. Shapiro observed that Plaintiff's attention, concentration, and recent and remote memory skills were intact. (T. 14.)

Second, the ALJ considered Plaintiff's activities of daily living that were inconsistent with his allegations of disabling symptoms. (T. 13-18.) For example, the ALJ noted that Plaintiff reported that he could attend to his personal needs without any difficulties, prepare simple meals, perform some cleaning, go shopping, watch television, drive a motor vehicle, and

use a computer all day. (T. 14, 18.) The ALJ noted that Plaintiff testified that he was attending community college, recently earned an A grade in a college English course, and planned to attend school full-time to earn a degree in computer information systems, which the ALJ found undermined Plaintiff's allegations of concentration deficits and difficulties with social interaction. (T. 14, 18.) Finally, the ALJ noted that Plaintiff reported that he went to the gym and went out to bars, where he enjoyed entertaining his brother and friends, which the ALJ found contradicted Plaintiff's allegation that he isolates himself. (T. 18.)

Accordingly, the ALJ's overall decision to discount Plaintiff's allegations was supported by substantial evidence even without considering Plaintiff's sporadic mental health treatment. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error where the credibility analysis was supported by substantial evidence). Therefore, even if the ALJ erred by considering the sporadic nature of Plaintiff's mental health treatment, it would be harmless.

For these reasons, the ALJ's credibility analysis was supported by substantial evidence and remand is not required on this basis.

**D.      Whether the ALJ Was Required to Consult a Vocational Expert at Step Five**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 17-19 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v.*

*Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004).  The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at \*20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate.  *Baldwin*, 2009 WL 4931363, at \*27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]).  However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.)  A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at \*27.

Here, the ALJ found that Plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations, however these limitations had little or no effect on the occupational base of unskilled work at all exertional levels.  (T. 19.)  As discussed above in Part III.A. of this Decision and Order, the ALJ properly determined that Plaintiff's mental condition did not limit his ability to perform unskilled work.  (T. 15-18.)  Accordingly, the ALJ was not required to consult a vocational expert, and properly found Plaintiff  "not disabled" as directed by Medical-Vocational Rule 204.00.  *See Zabala,* 595 F.3d at 409 (finding that the ALJ permissibly relied on the Medical-Vocational Guidelines without consulting a vocational expert at step five where the plaintiff's mental condition did not limit the plaintiff's ability to perform unskilled work).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: August 18, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge